### SMITH v. DAY et al.

#### (Circuit Court of Appeals, Ninth Circuit. February 15, 1904.)

#### No. 959.

**1. NEGLIGENCE—WHEN QUESTION FOR JURY—EVIDENCE CONSIDERED.**

Defendants were contractors engaged in the construction of locks for the government at the Cascades in the Columbia river, and in the course of the work were doing blasting. A steamer used a landing on the reserved premises on its daily trips, and remained there for some time. While so lying with some passengers on board, and others passing to and from the boat, defendants fired a blast at a distance of 150 to 200 feet from the landing, and a piece of rock struck and injured plaintiff, who was in the boat. Plaintiff testified that he heard blasting some time before, but thought it was at a greater distance. *Held*, that while defendants had a right to continue the prosecution of their work, and passengers on the boat or premises assumed all risks necessarily incident thereto if conducted with skill and reasonable care, whether or not defendants exercised such skill and care, there being evidence tending to show that they gave no notice to the boat passengers that a blast was about to be fired, and whether plaintiff was guilty of contributory negligence, were questions of fact to be determined by the jury under all the evidence.

Gilbert, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Oregon.

This was an action to recover damages sustained by the plaintiff while a passenger on a steamboat belonging to a public transportation company engaged in navigating the Columbia river. The defendants were contractors engaged in the construction of locks for the government at the cascades in said river. The plaintiff, with other passengers, entered the boat of the navigation company while it was lying at a wharf on the premises reserved by the government for its work upon the locks, but which was its regular landing place on its daily trips. The plaintiff seated himself in the cabin of the boat, and fell asleep, and while in that condition was struck on the head by a rock thrown from some blasts which were exploded by the defendants within 200 feet of the boat, and which broke through the roof of the cabin. For the injuries received from this blow the plaintiff seeks compensation.

The first trial of the case in the court below resulted in a judgment for the defendants. The case was then brought to this court upon writ of error (100 Fed. 244, 40 C. C. A. 366, 49 L. R. A. 108), and the judgment was reversed, and the cause remanded for a new trial, upon the error of the court in refusing to instruct the jury, after admitting testimony as to an agreement between

the defendants and the navigation company that the latter used the wharf at its own peril, that, if such an agreement existed, it would not bind the plaintiff. This was the sole ground for reversal, but the court commented upon other points in the case as follows: "We agree with the learned judge of the court below where he said, in ruling upon the plaintiff's motion for a new trial (86 Fed. 62) that: 'The plaintiff and his fellow passengers went upon the premises where the blasting was being done with their eyes open. Their right there, whether it was a right by sufferance or license, implied or otherwise, was subordinate to the right of the defendants to prosecute the work in which they were engaged. These passengers assumed all risks necessarily incident to such work prosecuted with skill and reasonable care—such care as is usually employed under like circumstances. They had a right to expect, and are presumed to have relied upon, this degree of care.' We also agree, contrary to the contention of the plaintiff in error, that the facts and circumstances of the case were such as to make it proper for the court below to submit to the jury the question of contributory negligence on the part of the plaintiff; and, in the main, we think the instructions given by the court below to the jury were quite as favorable to the plaintiff as they should have been, and in one respect perhaps too much so, namely, in submitting to the jury the question as to whether the defendants were in duty bound to cover their blasts, or to await the departure of the boat before firing them." 100 Fed. 244, 40 C. C. A. 366, 49 L. R. A. 108. In accordance with this decision, a second trial of the case was had in the court below, but no verdict was reached, as the jury could not agree. A third trial was then had, wherein the jury returned a verdict in favor of the plaintiff for $2,000. The defendants moved that the verdict be set aside, and a new trial had, because of certain alleged errors in the instructions, and because of the insufficiency of the evidence to sustain the verdict. The court below granted the motion (117 Fed. 956), and upon the fourth trial, at the conclusion of the plaintiff's testimony, a nonsuit was granted. From the order directing a nonsuit an appeal is taken to this court.

G. W. Allen and A. S. Bennett, for plaintiff in error.

Dolph, Mallory, Simon & Gearin and Whitney L. Boise, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The assignments of error relate solely to the action of the trial court in granting the defendants' motion for a nonsuit. The only question for determination is, therefore, whether or not the evidence introduced by the plaintiff was sufficient to sustain the plaintiff's case.

The negligence alleged in the complaint is the setting off of the blasts by the defendants at the particular time mentioned, when many persons were passing to and from the boat, and the failure of the defendants to give notice or warning to the plaintiff and others that they were about to do such blasting. It is admitted by counsel for plaintiff, in their brief, that the right of the defendants to blast in the prosecution of their work was paramount to the right of the public in using the river; and the Circuit Court of Appeals, upon the former hearing, established the law of the case in this regard, when it agreed with the ruling of the trial court that "the plaintiff and his fellow passengers went upon the premises where the blasting was being done with their eyes open. Their right there, whether it was a right by sufferance or license, implied or otherwise, was subordinate to the right of the defendants to prosecute the work in which they were engaged." The testimony shows that it was the practice of the defendants to fire off

blasts at the noon hour, when most of the workmen were at dinner, and again at the close of the day's work. It was also the custom of the boat to arrive near the noon hour, and lie at the wharf for a period of time ranging from 45 minutes to 2 hours and more, during which time passengers were passing to and from the boat. The testimony is practically a unit in the statement that no cover was provided for the blasts, or any preparation made to prevent the rocks from flying in all directions. Under these circumstances the question of notice or warning to the general public that blasts were to be fired becomes of importance. Harry Martin testifies that he was in the employ of the defendants at the time in question, clearing up the beach at the lower end of the locks. He states that the "closest blasting was about 150 or 200 feet from the boat landing"; that he was about 125 feet from the blasting, and hurried to find shelter when the blast occurred; that he heard no word of warning given before the blasts were exploded, and saw no signal. Monroe Vallet testifies that he was on his way to the boat landing to take passage on the boat when the blasts occurred; that he was about 150 yards away, and heard no alarm given before the blasting. U. D. Kelly was on the boat as a passenger at the time, and was standing on the deck when he noticed a smoke beginning to rise from the works at the locks, about 150 feet distant, and, realizing that it indicated the touching off of a blast, immediately sought shelter in the cabin, and was near the plaintiff at the time he was injured. This witness testified that he heard no outcry or warning before the blasts were touched off, and saw no signals given. William Ruffeno, the steward of the boat, testified that he went onto the boat some five minutes before the blasting, and could see the place where the blasting occurred while walking to the boat. He was in the purser's office at the time of the accident, but heard no warning given, and saw no flag or signal as he came to the boat. John Young was a passenger on the boat, and was standing on the deck of the boat when the men employed at the locks went to dinner, and for 20 minutes before the blasting. He testified that three or four men stayed at the work, and one of them said "Look out!" in a moderately loud tone just as he touched off the blasts; that he did not wave his hands or give any other signal; that this man and the others there then got under shelter of carts and machinery, and the blasts occurred. S. Mosher, a passenger on the boat, testified that he was on the deck of the boat, talking with the witness Young, when the workmen left the locks for dinner, and noticed two or three men remaining at the pits; that he saw the blasts set off and the men run to shelter, and when the rocks began to fall he hastened inside the cabin. He did not hear any warning cry or see any signal given. The plaintiff testified that at the time he went on board the boat he knew nothing whatever about any blasting being done in the vicinity; that, after he had been on the boat for a little time, he heard something that he thought was blasting, but it seemed to him quite a distance away; that after a little talk with the steward, and a game of cards with some passengers, he sat down in the cabin on the upper deck, and fell into a doze; that while in that condition he was struck on the head by a rock, and rendered unconscious, with the injuries complained of resulting.

Was this failure to give notice to the persons in the vicinity, that blasts were about to be fired, negligence on the part of the defendants? This court held, when the case was previously before it, that the defendants had a right to prosecute the work in which they were engaged, and that the passengers upon this boat assumed all risks necessarily incident to the prosecution of the work, when such work was prosecuted with skill and reasonable care. Did the exercise of reasonable care require timely notice to be given before firing the blasts? There is no fixed standard by which a court can say that any particular act or omission is or is not reasonable or prudent. It must be considered with relation to the surrounding circumstances in each case. As stated by the Supreme Court in Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 683, 36 L. Ed. 485:

"The policy of the law has relegated the determination of such questions to the jury under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court"—citing cases.

In our opinion, the question whether or not the defendants exercised reasonable care in the operation of blasting at the time and under the circumstances disclosed by the testimony was a proper one for the jury to determine, as well as the question of contributory negligence on the part of the plaintiff. The court below treated the testimony of the plaintiff to the effect that he knew that blasting was going on as conclusive against him on the question of notice. In this the learned judge fell into error, in our opinion. It is conceivable that reasonable men might say that in the prosecution of such work, under the circumstances disclosed by the record, some notice should be given of each separate and distinct blast fired in the immediate vicinity of people liable to be injured thereby.

For the reasons stated, we think the court erred in taking the case from the jury. The judgment is therefore reversed, and the cause remanded for a new trial in accordance with this opinion.

GILBERT, Circuit Judge (dissenting). The evidence, to my mind, clearly shows that the plaintiff in error had knowledge of the fact that blasting was going on before he went upon the boat. If so, he had knowledge of the fact concerning which it is charged in the complaint that the defendants in error failed to give notice. It must be borne in mind that the allegation of negligence concerning the failure to give notice was, not that the defendants in error failed to notify the plaintiff in error of the danger involved in the blasting, but merely failed to give notice of the fact that they were about to do the blasting. The allegation is that the defendants in error "negligently and carelessly omitted to give notice or warning to plaintiff and others that they were about to do said blasting." The plaintiff in error, on the first trial of the cause, testified as follows: "There was about twenty-

five or thirty passengers going up the stream, and I was going down, and the time of the hubbub of the people getting off the boat there was blasting at that time, so I understood. I heard some noise, and went in and sat down there, and the people went up the river." On the last trial of the cause he testified that after he had gone on board the boat, and had been there some 15 minutes, he heard some noise that sounded like blasting at a distance; but he admitted that his memory at that time was not very clear, and admitted also that he gave on the first trial the testimony above quoted. If he heard the noise of blasting, and understood that blasting was going on when he went on board the boat, he had all the knowledge of the fact that blasting was going on that could have been conveyed to him by any form of warning that the defendants in error might have adopted. Indeed, the sound of the blasting itself was the best form of notice that could be given. I think the judgment of the Circuit Court should be affirmed.